# WHEELING.

## MARTIN ADM'X. *v.* SMITH *et als.*

Submitted January 22, 1885.—Decided April 11, 1885.

1. Where a non-resident defendant, against whom decrees have been rendered upon order of publication, appeared in the circuit court and filed, what he styled "a bill of review," setting out the decrees and proceedings in the original cause and praying that said decrees may be reversed for errors assigned therein, and has given security for costs as such non-resident, he may appeal to this Court from a decree dismissing such bill of review; and this Court, treating such bill as a petition for a re-hearing under the statute, will review the decrees complained of therein without

requiring the appellant to file a formal petition in the circuit court for a re-hearing.  (p. 583.)

2. A widow is not entitled to dower in lands purchased with partner-ship-funds for partnership-purposes until the partnership-debts are paid.  (p. 584.)

3. A widow is not entitled to dower in real estate subject to a vendor's lien except as to the residue after satisfying such lien.  (p. 585.)

4. Where land has been sold under and confirmed by decrees of court, the sale may be set aside for error in the decree ordering the sale if it clearly appears that the land, on account of such error, sold for materially less than it otherwise would have done, especially if the purchaser was a party to the suit.  (p. 585 )

5. A widow files her bill as administratrix of her deceased husband claiming as her own certain bonds, which she avers were given to her by her intestate husband before and in consideration of marriage.  HELD :

    I  She is an incompetent witness to prove the gift or delivery of said bonds, and objection to her competency may be made for the first time in the appellate court.  (p. 586.)

    II. To sustain such gift it must be shown by clear, unequivocal and convincing proof, that the donor delivered the bonds or property to the donee with an intention to part absolutely with the title and possession of it.  (p. 589.)

6. A case in which the claim of such gift is not sustained by the evidence.

The opinion of the Court contains a statement of the case.

*H. J. Fisher, Jr.* for appellant.

*Tomlinson & Polsley* for appellee.

SNYDER, JUDGE :

George Martin intermarried with Lydia J. Lasley on July 19, 1876, and at that time, he was the owner in fee of two lots of land, being parts of lots No. 10 and No. 11 in the town of Point Pleasant in Mason county, the latter of which was subject to a vendor's lien thereon for $700.00, and the former was owned jointly by said Martin and his partner, Enos Smith.  Subsequently the said Martin and wife and others, by deed dated July 18, 1878, executed a trust deed on both said lots to secure the payment of a debt to Julia A.

Ball, which seems to have been afterwards settled.    Martin died intestate, January 23, 1879, leaving a widow, the said Lydia J. Martin, but no children, his brothers and sisters being his heirs at law.    He owned no other real estate than the aforesaid lots, and at the time of his death he was indebted to insolvency.    His widow qualified as administratrix of his estate, and as such she brought this suit in September, 1879, in the circuit court of Mason county against the heirs and creditors of her intestate, among the latter was the defendant, J. H. Brooks, to ascertain the debts of the estate, have her dower assigned, sell the said lots, settle her accounts, &c.

The defendant Brooks, being a non-resident was proceeded against as such by order of publication.    The cause was referred to a commissioner to settle the accounts of the plaintiff, as administratrix, convene the creditors by publication and report the debts and their priorities.    The commissioner made his report showing that the vendor's lien on lot No. 11 had not been discharged, and that the estate was indebted to the defendant Brooks $445.00, and to many other creditors.    He reported specially that the plaintiff was the owner of four United States bonds of $500.00 each, claimed by her in her bill, and which will be hereafter fully considered.

An order was likewise made appointing commissioners to assign to the widow for life as her dower one third of all the real estate of which the intestate died seized.    The commissioners made their report by which they assigned to the plaintiff, as her dower, the upper portion of said lot No. 11, on which is situated the brick store-house, this being in their judgment one-third in value of the interest of said Martin in said lots No. 10 and No. 11.

On April 24, 1880, the court entered a decree confirming both of said reports without exception to either, and decreed that said four United States bonds were the separate property of the plaintiff, that the said lot No. 10 was the partnership property of the defendant Enos Smith and the intestate, and that said Smith had a first lien thereon for $2,793.91, that certain other debts, including the vendor's lien for $725.50 on lot No. 11, aggregating about $2,000.00 were preferred debts, and that the non-preferred debts, amounting to, say, $1,400.00, among which is the debt of the defendant, Brooks, should be

paid ratably after paying the said preferred debts.    Commissioners were also appointed to sell said lots No. 10 and No. 11, subject to the dower assigned as aforesaid.

In September 1880, the defendant Brooks, who had not appeared in the cause, with others, by leave of the judge of the court, exhibited their bill of review against the parties to the .original suit other than themselves.    This bill, which was subsequently dismissed as to all the plaintiffs except Brooks, after setting out at much length the bill and proceedings in the original cause, assigns a number of alleged errors in said proceedings and prays that decrees entered therein may be re-reviewed, reversed and set aside.  ·

After this bill of review had been filed and process executed upon the defendants therein, the commissioners under the decree in the original cause before mentioned advertised and sold said lots No. 10 and No. 11, as directed by said decree, and made their report of the sales to the court from which it appears that Enos Smith became the purchaser of the intestate's interest in lot No. 10 at the price of $1,200.00, and the plaintiff, the widow, became the purchaser of lot No. 11, subject to her dower assigned therein, at the price of $900.00.    To this report the defendant, Brooks, filed several exceptions, one of which was that the sale was improperly made after notice of the pendency of the bill of review, and another that the property was erroneously sold subject to the widow's dower without first satisfying the liens having priority over such dower.

By a decree entered October 20, 1880, the said exceptions were overruled and the report confirmed, and the purchase money for lot No. 10 ordered to be credited on the preferred debt due the purchaser, Enos Smith.

On motion of L. J. Martin, the administratrix, the said Brooks, under the order of the court, gave security for any costs that might be incurred in said bill of review.

The administratrix then demurred to the bill of review which demurrer, being argued by counsel, was, by decree of February 24, 1883, sustained by the court and the bill of review dismissed with costs.    From this decree and the decrees entered in the original cause, the defendant, J. H. Brooks, obtained this appeal.

The first question to be solved is: Has this appellant the right to appeal from the aforesaid decrees or any of them? He was proceeded against by order of publication as a non-resident, and the only appearance made by him in the circuit court was by the filing of his bill of review and subsequently excepting to the report of the sale. Our statute provides, that any party, who was not served with process, and did not appear in the suit before the date of the decree of which he complains, may within one year from that date, file his petition to have the proceedings reheard in the manner provided for by sections twenty-six and thirty of chapter one hundred and six of the Code. Chapter 109, section 14, Acts of 1870.

Section thirty, above referred to, provides that such party upon executing and undertaking with security conditioned to pay all costs that have been or may be awarded against him in the suit in case he shall fail to obtain a decree therein, " shall be permitted to make such defence in such action or suit as he might have made if he had appeared therein before such judgment or decree was rendered." Acts of 1870, chapter 109, section 30; App. Code, p. 749.

This Court has repeatedly decided that a non-resident defendant, against whom a decree has been rendered upon publication, and who has not appeared in the court below, is confined to the remedy prescribed by the statute, and he can not in the first instance appeal from such decree to this Court. *Vance* v. *Snyder*, 6 W. Va. 24; *Meadows* v. *Justice, Id.*, 198.

In many other cases in this State and in Virginia, it has been held that a literal compliance with forms is not required by courts of equity, they regard substance rather than mere form, and so mould and treat pleadings as to attain the justice of the case. Under this rule, a petition for a rehearing has been treated as a bill of review when the facts made it necessary to so regard it, and a notice to correct a decree on bill taken for confessed has been treated as a petition for a re-hearing. *Kendricks* v. *Whitney*, 28 Grat. 646. A bill of review has been treated as an original bill, or a petition in the nature of an original bill. *Hill* v. *Bowyer*, 18 Grat. 346; *Mettert* v. *Hagan, Id.*, 231; *Sturm* v. *Fleming*, 22 W. Va. 404; *Riggs* v. *Armstrong*, 23 *Id.* 760.

In *Haymond* v. *Camden*, 22 W. Va. 180, this Court held that, " A non-resident party, against whom a decree has been rendered upon order of publication, having appeared and filed his answer in the circuit court, stating therein grounds of error, and praying the court to set aside the proceedings had against him on account of said error, which the court upon the hearing refused to do, may appeal to this Court from the decree so refusing to correct such error, without having first filed a formal petition for a re-hearing in the cause, and giving bond for the costs as required by the statute."

The appellant in the case at bar having filed in the court below what he styled a " bill of review," but which, in fact, has all the elements required for a petition for a re-hearing by the statute, and having also filed bond with security for the costs, we think it clear, according to the foregoing authorities and the practice in courts of equity, that he may appeal from the decree refusing to entertain his application for a re-hearing and correction of the alleged errors in the proceedings had in the cause. His bill of review has all the substance, and more than the statute requires to be stated in a petition for a re-hearing. It being thus sufficient as a petition for a re-hearing and having been filed and rejected by the circuit court, the appellant on this appeal may have a review not only of the decree refusing the re-hearing, but also the decrees entered in the cause before his appearance and sought to be re-heard and corrected by his said petition; that is, in the words of the statute, he " shall be permitted to make such defense * * as he might have made if he had appeared before such decree was rendered." Thus it becomes unnecessary to consider whether the appellant was entitled to review the decrees in the original cause by bill of review or not.

The first error assigned is, that the widow was improperly allowed dower in the whole of said lots No. 10 and No. 11. The facts show that lot No. 10 was the partnership property of Enos Smith and the intestate, purchased and sold as such and that, on account of debts of the partnership, the court decreed that Smith, the surviving purchaser had a preferred lien on the intestate's interest in said lot for a sum in excess

of the price for which it sold. In this lot, therefore, she had no dower; because a widow is not entitled to dower in partnership-lands purchased with partnership-funds for partnership-purposes until the partnership-debts have been paid. *Dyer* v. *Clark*, 5 Metc. (Mass.) 562; *Pierce* v. *Trigg*, 10 Leigh. 406, 426.

Lot No. 11 was subject to a vendor's lien for $725.50. A widow is not entitled to dower in real estate mortgaged by the husband before the marriage. She is entitled in such case to dower in the equity of redemption. *Heth* v. *Cocke*, 1 Rand. 344. The same rule applies to lands purchased by the husband either before or after the marriage upon which the vendor has retained a lien for part of the purchase-money. In such case the widow can have no dower until the purchase-money is satisfied; and she is only dowable in the land subject to such lien. *McClure* v. *Harris*, 12 B. Mon. 261; *Ellicott* v. *Welch*, 2 Bland's Ch. 242.

By the decrees in this cause the said two lots were sold subject to the dower of the plaintiff in both of them. This was plain error; for, as we have seen, she was entitled to no dower at all in lot No. 10, and only dowable in lot No. 11, subject to the vendor's lien for $725.50 thereon.

The sales of these lots having been confirmed the next question is, can they now be set aside? As the whole dower was assigned upon lot No. 11, and lot No. 10, consequently, sold free from any dower, no one could have been prejudiced by the sale of the latter lot, it is unnecessary to enquire whether the sale of it could now be disturbed. But lot No. 11, having been sold subject not only to full dower in it, but also subject to an equivalent dower in lot No. 10, it is very clear that the appellant and other creditors of the decedent were prejudiced by that sale. The record shows that this lot was purchased by the plaintiff subject to her dower in both lots. This Court has decided that, where land is purchased at a judicial sale by a stranger to the suit, the court will not refuse to confirm the sale because of an error in the decree ordering the sale, unless such error did have the effect of causing the lands to sell for materially less than they would have otherwise brought; but, that the court would set aside the sale for such error when the record clearly showed that

the lands sold for materially less than they otherwise would, on account of such error. *Hughes* v. *Hamilton*, 19 W. Va. 368; *Trimble* v. *Herold*, 20 *Id.* 602.

The sale in the case before us was excepted to by the appellant before confirmation, and the purchaser was not a stranger, but the plaintiff in the suit and the very party who was benefitted by the prejudice done to the creditors of the estate. That the sale, subject to this erroneously assigned dower, was clearly such as would of necessity materially effect the price of lot and cause it to bring much less than it would otherwise have brought is too plain for discussion. The circuit court should, therefore, have set aside the sale of lot No. 11, and ordered a sale of such part of it, free from any dower, as would pay off the vendor's lien and then assigned dower in the residue and sold that subject to such dower only; or if that were impracticable the whole lot should have been sold free of dower and the widow paid a gross sum in lieu of her dower in the surplus proceeds after satisfying the vendor's lien.

The only other assignment of error is that the court erroneously decreed that certain United States bonds were the separate property of the widow and that she was entitled to hold the same against the claims of the creditors of the decedent. The plaintiff in her bill avers that she was united in marriage with the decedent, George Martin, on February 19, 1876; "that before said marriage and in consideration thereof and of the love and affection he had for her, the said George Martin gave and delivered to her, as her own sole and separate property, four several United States bonds of $500.00 each," &c.

It is not claimed that there was any written contract in regard to these bonds, and, therefore, unless the transaction was fully executed and completed by the delivery of the bonds, it was void under the fifth subdivision of our statute of frauds,—chapter 98, Code p. 535.

To establish the parol gift and delivery of said bonds, the plaintiff was examined on her own behalf; it is, therefore, necessary to determine first whether or not she was a competent witness as to that matter. The whole of her testimony so far as it bears upon the issue in regard to the gift and

delivery of these bonds, consists of acts and conversations of the said Martin who was dead at the time her testimony was given, and it was clearly incompetent according to numerous decisions of this Court.—*Caldwell* v. *Prindle*, 11 W. Va. 307; *Anderson* v. *Cramer, Id.* 562; *Owens* v. *Owens*, 14 *Id.* 88.

The objection to her testimony is, that it is incompetent. It is immaterial, therefore, that such objection was not made in the court below, it may be made for the first time in the appellate court—*Rose* v. *Brown*, 11 W. Va. 122.

It is insisted, however, by the counsel for the plaintiff, that the statute — section 23, chapter 130, Code—relates only to suits against the personal representative or heirs at law of the deceased person, and as this suit involves merely a controversy between the plaintiff and the creditors of the decedent, the statute has no application. This position is too untenable for serious consideration. The only mode by which creditors can reach the assets of the estate of a deceased person is through the title acquired thereto by the representatives and heirs from the deceased person. If the construction contended for were sustained, the statute would have no effect in any suit against the representatives of a person who died insolvent; for, in such case the creditors alone are interested and neither the personal representative nor the heirs have any pecuniary interest. There is nothing in the terms or the spirit of the statute to support such a construction.

Excluding the testimony of the plaintiff relating to conversations and transactions had personally between the plaintiff and the decedent in regard to the gift and delivery of said bonds, the other testimony is plainly insufficient to establish such gift. It is proved in the cause that the plaintiff and decedent inter-married in February, 1876; that in November, 1875, prior to the marriage, the decedent was very ill and not expected to survive his illness; that plaintiff was then and had been for about —— years engaged to be married to him, and he at that time sent to the bank, where he had the bonds in controversy for safe-keeping, and had them brought to him; that when they were brought he was lying in bed, and plaintiff was present waiting upon him; that when handed to him he took them out of the envelope and

then put them in it again and called the plaintiff, handed her the package and said, " Jennie," (meaning the plaintiff,) " put them in the little drawer with the other things ;" that she took them and put them in a drawer of the decedent in the room ; that, a day or two afterwards, he was looking over his notes and the plaintiff got from the drawer a paper or envelope that looked like the one in which said bonds had been put and he " told her when she went home to take that with her which she did;" that in a short time after they were taken from the bank they were returned to it and put there on special deposit in the name of Martin, the decedent, who thereafter sold one of the bonds and used the proceeds and the interest collected on all the bonds for his own use and the other bonds remained in the bank in his name until after his death ; that some time in 1877, Martin was needing some money and in conversation with the witness, who was then in business with him, he referred to said bonds and " said he had the bonds there and could use them if he wanted, or something to that effect, but he didn't want to do it; that he had given them to Jennie, and wanted me " (the witness) "to try and collect up some money so that he would not have to break on them."

The foregoing is all the testimony in relation to the gift of the bonds, excluding the incompetent testimony of the plaintiff, and, in my judgment, it is too vague and inclusive to authorize the Court to hold that there was in fact either a gift or a delivery of the bonds to the plaintiff as her own property. The circumstances are all against such a conclusion and the direct testimony would be just as pertinent to show that the decedent had placed the bonds in plaintiff's hands for safe-keeping during his sickness, or that he intended to make them a *donatio mortis causa* to her in the event of his then death, as it would be to show an absolute gift, the word gift or any equivalent term tending to show an intention to part with the title to the bonds was never used, and such intention cannot be necessarily inferred from anything in the testimony. As soon as Martin recovered the bonds were replaced in the bank in his name. He sold one of them and collected and used as his own the interest every six months from that time till his death more than two years after, with-

out an intimation that he was not the absolute owner, and it was not until after his death that the present claim of the plaintiff was asserted, so far as the record here shows.   Marriage is not only a meritorious but a valuable consideration and will support a conveyance or gift against the debts of existing creditors if made without notice of any fraud on the part of the grantee or donee.   *Henning* v. *Wickham*, 29 Grat. 628.   But a gift of this character must be completed by a delivery of the property to the donee with an intention by the donor to part absolutely with both the title and the possession, and this must be proven by clear, unequivocal and convincing evidence.   This has not been done in this case.

It is scarcely necessary to add that the plaintiff cannot sustain her claim as a *donatio mortis causa*.   It is essential to a valid gift *mortis causa*, that the donor should make it in his last illness, and in contemplation and expectation of death ; and if he recovers the gift becomes void.   *Weston* v. *Hight*, 17 Me. 287.

For the reasons aforesaid, the decree of the circuit court of February 24, 1883 must be reversed also, so much of the decree of April 24, 1880, as confirms the report assigning dower, and orders the sale of lot No. 11 subject to dower so assigned by said report, and likewise that portion which decrees to the plaintiff the United States bonds therein mentioned and $916.73, the proceeds of a bond sold and interest in the others, and also so much of the decree of October 20, 1880, as confirms the sale of lot No. 11 in all other respects, the two last mentioned decrees are affirmed with costs to the appellant against the appellee, L. J. Martin, and the cause is remanded to said court for further proceedings there to be had in accordance with the principles announced in this opinion.

AFFIRMED IN PART.   REVERSED IN PART.   REMANDED.